[No. 20967. Department One. April 2, 1928.]

BENNIE SIGOL, *by his Guardian ad litem* ROSE SIGOL, *Respondent,* v. D. KAPLAN, *Appellant.*

ROSE SIGOL, *Respondent,* v. D. KAPLAN, *Appellant.*[1]

[1] MUNICIPAL CORPORATIONS (379, 380)—USE OF STREETS—CROSSING AND PASSING—NEGLIGENCE. The negligence of the driver of an automobile, striking a boy riding a bicycle in the same direction and turning off, is for the jury, where there was evidence that he was driving on the left side of the road and gave no signal or warning of his approach (TOLMAN, J., dissenting).

[2] SAME (383, 391)—USE OF STREETS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A boy riding a bicycle and violating an ordinance by turning to the left side of the road in danger from approaching traffic, is not guilty of contributory negligence, as a matter of law, precluding recovery when hit from behind by auto driver, violating the law by driving on the left side, and without giving any warning signal of passing.

[3] TRIAL (133)—VERDICT—AMENDMENT BY COURT. A money award, made by the verdict of a jury deciding contested unliquidated damages, cannot be altered by a trial court without the consent of the party unfavorably affected.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 4, 1927, upon the verdict rendered by a jury in favor of the plaintiffs in consolidated actions for personal injuries. Affirmed as to one plaintiff and reversed as to the other.

*Preston, Thorgrimson & Turner,* for appellant.

*Robbins & Rickles,* for respondents.

PARKER, J.—The plaintiff, Bennie Sigol, a minor, commenced his action in the superior court for King county, by his mother, his guardian *ad litem,* seeking recovery of damages for his personal injuries claimed as the result of the negligent driving by the defendant, Kaplan, of his automobile. At the same time, the

[1]Reported in 266 Pac. 154.

plaintiff, Rose Sigol, a widow, mother of Bennie, commenced her action in the same court, seeking recovery of damages in the incurring of expense by her incident to hospital and medical care of her son, Bennie, rendered necessary by the same negligent driving by the defendant of his automobile. The controlling facts being concededly common to both actions, in so far as the questions of negligence and contributory negligence were concerned, and differing only as to measure of damages, the actions were, by consent of all parties, tried simultaneously in the superior court before the same jury. The trial resulted in a verdict being rendered in favor of the plaintiff Bennie Sigol, awarding him recovery in the sum of two hundred dollars, and a verdict being rendered in favor of the plaintiff, Rose Sigol, in the sum of five hundred eighty dollars. A motion for new trial was made in behalf of the plaintiff Bennie Sigol, principally upon the ground of inadequate award of damages. That motion was disposed of and final judgment rendered awarding recovery to him, as follows:

". . . the jury having rendered a verdict in favor of the plaintiff against the defendant in the sum of $200 . . . and the court having ordered that plaintiff's motion for a new trial be granted unless plaintiff accepts an increase of the said verdict from $200 to the sum of $800, and plaintiff having in open court elected to accept said increased verdict, and the court being in the premises fully advised, it is now therefore hereby

"ORDERED, ADJUDGED AND DECREED that plaintiff have and recover from the defendant the sum of $800, together with his costs and disbursements herein to be taxed.

"To all of which defendant excepts and exception allowed."

Final judgment was rendered awarding recovery to the plaintiff Rose Sigol, in the sum of five hundred

eighty dollars, in accordance with the verdict rendered in her favor. From each of these judgments, the defendant Kaplan has appealed to this court.

The controlling facts, as we think the jury were warranted in believing, and manifestly did believe them to exist, may be summarized as follows: Yesler Way, a paved public street in Seattle, runs east and west. Upon its surface there is maintained a double track, cable street railway line. The paved roadway is forty-two feet wide between the sidewalk curbs. It is approximately fourteen feet from the respective curbs to the outer rails of the respective tracks, and hence approximately fourteen feet from one outer rail to the other outer rail. Yesler Way is intersected at right angles by 18th avenue, and also by 19th avenue, two hundred fifty-six feet to the east. Yesler Way has no intersecting public alley between these avenues. There is a private driveway opening into Yesler Way from the south, midway between these avenues. The injury to Bennie Sigol here in question occurred on the roadway of Yesler Way nearly opposite the entrance of this private driveway. From that place there is a clear, unobstructed view along Yesler Way to the east for a distance of four hundred fifty feet, when there is no traffic obstructing the view.

Bennie Sigol was, at the time in question, a normal boy very nearly twelve years old. He was then riding a bicycle at a slow pace westerly along the paved roadway of Yesler Way near the northerly curb. Coming to a point nearly opposite the private driveway on the south, he turned south, to his left, maintaining approximately the same slow speed, intending to cross the roadway into the driveway. He testified that just before, or as he turned to his left, he looked back to the east to see if any automobiles or street cars were coming from that direction, and saw none; that he then

looked to the west to see if there were any automobiles or street cars coming from that direction, and saw none.

When he had arrived between the rails of the southerly car track, and thus well south of the center line of Yesler Way, he was struck by appellant's automobile, being driven by appellant westerly along Yesler Way at a rate of speed estimated by several witnesses at from twenty-five to thirty miles per hour. The fact that Bennie Sigol was between the rails of the southerly track, and thus clearly south of the center line of Yesler Way, is testified to by eye witnesses, though he himself does not seem sure of being then that far south of the center line of Yesler Way. Appellant's automobile did not come to a stop until it had nearly reached 18th avenue, some one hundred and twenty-five feet to the west of where it had struck Bennie Sigol and his bicycle.

Appellant was driving his automobile, nearly the whole of the distance between 18th and 19th avenue, south of the center line of Yesler Way. No sounding of any horn or other signal was made from appellant's automobile as it approached Bennie Sigol on his bicycle. Seemingly, Bennie Sigol should have seen the approach of appellant's automobile from the east, by even a somewhat casual observation, but apparently, as the jury might have believed, his looking to the east was prompted solely by his intent to see if any automobile or street car was approaching from that direction along the northerly half of the roadway; that is, along that portion of the roadway which westbound traffic should proceed, and that this accounted for his failure to take notice of appellant's automobile approaching from the east along a course south of the center line of Yesler Way.

There were no street cars, automobiles or other ve-

hicles moving upon Yesler Way within view of the place of the accident at the time it occurred, other than appellant's automobile and Bennie Sigol's bicycle; nor were there within such view even any parked vehicles, other than two or three automobiles which were parked at the curb some distance away. No evidence was introduced in behalf of appellant.

[1] It is contended in behalf of appellant that the evidence fails to support either of these judgments; in that it fails to show negligence on the part of appellant, and in that it shows contributory negligence on the part of Bennie Sigol; and that the trial court erred in refusing to take the case from the jury and so decide as a matter of law, in response to appropriate and timely motions made in that behalf. It seems to us there is but little room for arguing that the evidence was not sufficient to carry the case to the jury touching the question of appellant's negligence as a proximate cause of the resultant injury to Bennie Sigol.

[2] The question of whether or not, in the light of the facts above summarized, it should be decided as a matter of law that Bennie Sigol was guilty of contributory negligence presents a somewhat more difficult question to answer. Bennie Sigol violated the law in turning to the left and crossing the roadway at a point between the intersections of Yesler Way and 18th and 19th avenues. Appellant also violated the law in driving along a course south of the center line of Yesler Way and not as near to the northerly curb as practicable under the circumstances; in approaching Bennie Sigol, in view of the impending danger, without sounding any horn or signal; and there so driving his automobile at an unlawful rate of speed, that is, more than twenty miles per hour. These rules of the road were plainly stated to the jury by the court in its instructions, and concededly were correctly so stated

in harmony with ordinance No. 49,185 of the city of Seattle and the state statute. In specifying these law violations by appellant, we mean that the jury were warranted in so finding.

We are of the opinion, under all the circumstances here appearing, that, while Bennie Sigol was violating the law of the road in turning to the left and crossing the roadway there, yet he having passed beyond the zone of danger, under ordinary circumstances, in so far as traffic coming from the east was concerned, and into a zone wherein whatever danger he might be likely to encounter would be from travel coming from the west, it should not be held as a matter of law that his negligence contributed to his injuries in any material degree. We conclude that both the questions of appellant's negligence and of Bennie Sigol's contributory negligence were for the jury to decide. We think observations made in *Twedt v. Seattle Taxicab Co.*, 121 Wash. 562, 210 Pac. 20, are in harmony with this conclusion, though recovery was denied in that case.

[3] It is further contended in behalf of appellant that the trial court erred in rendering judgment against him in favor of Bennie Sigol for the sum of $800 and thus increase the $200 award made by the verdict of the jury. It seems plain to us that this was erroneous. It was, in effect, a denial of appellant's right of trial by jury, as to the amount of the award. The fact that this was done in pursuance of an election made in behalf of Bennie Sigol to accept such increased award rather than have a new trial, is of no controlling force whatever as against appellant. If the court's change of the award of the verdict had been favorable to appellant, he, of course, could not have complained; but manifestly he did not consent to such increase of the award of the jury against him. Indeed, he has at all times contended that there should be no award at

all against him. This court has never held that a
money award made by the verdict of a jury deciding
contested unliquidated damages, could be lawfully in-
creased or decreased by a trial court without the con-
sent of the party unfavorably affected by such increase
or decrease. An election of a party to submit to a dif-
ferent award than that made by the verdict of the jury,
in lieu of being awarded a new trial, must be an elec-
tion more favorable to his opponent than the award of
the verdict. It seems to us safe to say that, in no juris-
diction wherein the right of trial by jury is guaranteed
as by our constitution, has it ever been held otherwise.

Counsel for Bennie Sigol cite, in support of the trial
court's judgment increasing the award of the verdict,
the decision of the Louisiana supreme court in *Cald-
well v. Vicksburg, S. & P. R. Co.*, 41 La. Ann. 624, 6
South. 217, following the law as established by prior
decisions of that court. We are to remember that the
inherited jurisprudence of Louisiana is the civil and
not the common law, and hence the makers of its con-
stitution and laws have not felt the necessity of
guaranteeing trial by jury in civil cases to the extent
such right has been guaranteed by the makers of the
constitutions and laws of common law states, of which
Washington is one. Referring to Art. 9 of the Louisi-
ana constitution, we find the right of trial by jury
guaranteed only in criminal cases, and do not find else-
where in that constitution any further guaranty of the
right of trial by jury. 3 Constitution and Statutes of
Louisiana, by Wolff, p. 2227. Manifestly, for this rea-
son and because of want of statutory restrictions, the
courts of Louisiana seem to have the power to revise
jury awards in civil cases, though evidently the power
has been seldom exercised.

We conclude that the judgment rendered in favor of
Rose Sigol must be affirmed. It is so ordered. We

conclude that the judgment rendered in favor of Bennie Sigol must be reversed, and his case remanded to the superior court for the granting or overruling of his motion for new trial, or for the rendering of a judgment in his favor in the sum of two hundred dollars, as awarded by the jury, and for such other proceedings as may not be inconsistent with our views herein expressed. It is so ordered.

Rose Sigol shall recover as against appellant her costs and disbursements incurred in this court. Appellant shall recover as against Bennie Sigol his costs and disbursements incurred in this court. The clerk will make equitable apportionment of the costs and disbursements so awarded—the two cases having been brought here upon one record of the trial and one set of briefs.

MACKINTOSH, C. J., MITCHELL, and FRENCH, JJ., concur.

TOLMAN, J., (dissenting).—In my opinion the boy was guilty of contributory negligence as a matter of law. I therefore dissent.